The decision was based on two points, as the court noted. Number one, are PDAs, electronic multifunction cards? And number two, is there any evidence that anyone used Claim 1 to patent an issue on these devices? Practice the method. Practice the method. It's a method claim. Correct. Use doesn't apply. Practice the method of Claim 1 on these devices. The method being transferred information, storing the information on the device, using a password to protect the device. Judge Jensen found that at least three different limitations were not met, and therefore there can't possibly be infringement. Well, this is a case of induced infringement. So the question is, if there's no direct infringement, then by definition there can't be induced or contributory infringement. Correct. But this was decided not at the trial. It was decided on a motion to summary judgment. So what? Summary judgment. The movement must put forward some evidence that the method was not patented. For instance, the device should never sell. Wait a second. The Celotex decision makes it quite clear that where the non-movement has the burden and where appropriate grounds have been raised in the motion, then the burden is on the non-movement to come forward with something that would show that there's a genuine issue for trial. But if one brings forth a manual that teaches every single step of the patented method… But it doesn't teach the steps in the sequence, and that's not the only way in which these devices can be operated. This is not the molecular decision. That's not the only way, but circumstantial evidence is evidence that the circumstances indicate that someone actually used these devices according to the patented method. Like any circumstantial evidence. Yeah, but the question isn't whether the evidence is direct or circumstantial. The question, as Judge Lind correctly suggests, is whether the evidence has enough total force that a jury had to decide whether infringement occurred or not. Here it didn't go to the jury. The judge short-circuited it, decided it didn't show. So you have to show that the question was close enough to merit going to a jury. Well, how could a manual that goes along with trials… Usually we ask the questions here, not counsel. No, no. I know you're on it. I wasn't asking. Where a manual that comes with a product teaches to transfer data into the device, use a password to protect the device, select from the transfer data that which you want to display, and upon selection of display, the manual shows that, and you put the manual in the case. You know what happened below. Judge Jensen found that the manual taught a great many things. It was very long, very complicated, and no one reading it would go out and practice the method. Yes, you can find a little bit here and a little bit there and a little bit on some other page, and if you cobble it together and put it in the right sequence, yes, maybe you can find the steps of the method. But somebody reading the manual wouldn't know to go out and practice the method. That's what he found. I wouldn't think that that would define logic. I think anyone who's ever used any of these devices, anyone who's familiar with any of these devices would know that people… Well, we're not talking about what people know. We're talking about what the manual encouraged purchasers of these products to go out and do. And Jensen found it would not teach them to go out and do this method. Now, you're saying, well, yes, it would. And I'm saying to you, well, yes, in the sense that if you cobble together a little snippet here and a little snippet there and rearrange the sequence, maybe it sort of would support practicing the method. But it's not really what the manual teaches the customer to go out and do. I think the manual shows that that's the whole purpose of these devices, a PDA or pocket-sized, wallet-sized computer. The whole purpose is to store data from various sources to select and display. Yeah, but the purpose isn't to be a substitute of a credit card. Come on. This invention is a mobile credit card. It's more than that. It's a credit card where I have Visa and MasterCard and Discovery Card all on one piece of plastic. And data sets from various documents, pictures. A lot of credit cards. More than just credit cards. A lot of credit cards. Nowhere in claim 1 is it limited to a credit card. It's limited to a card such as a credit card. That's the language in the patent. A card such as a credit card. That's by way of example. Such as is not a credit card. Such as is by way of example. But it's a card. Forget credit card. Card. Right. We're talking about a card. And this court defined card as a rectangular flat piece of stiff material. Rectangular flat piece of stiff material. Piece can't be one piece. Look. Let's focus on what Judge Jensen ruled. Because that's what we're reviewing. We're not re-arguing a case here. This isn't the trial. This isn't summary judgment being argued in front of us. The question is was Judge Jensen wrong enough that we have to reverse it and send it back and make him try the case in front of a juror? That's the practical question, right? Right. Now he said flat means really, really thin. Like a credit card is really, really thin. And your PDA devices and the other devices are something like 17 to 30 times thicker than a credit card. Therefore, Jensen said that's not flat by any definition that's in the context of this patent. Now where is he wrong in that? Because that's a question of fact. This case was remanded. Everything's a question of fact. Fact questions can be resolved on summary judgment when they're not close. When it doesn't require a jury. Because the evidence is so lopsided that any rational juror could only decide the thing one way. So Judge Jensen is ruling rational jurors would have to find that this device, the accused device, is so thick that it doesn't qualify as flat. But when this case was remanded the last time it was before the Federal Circuit, the Federal Circuit had the POM 7 and said issues of fact remain as to whether literal or a deduction of equivalence infringement occur. We know what we said, but you're not answering the question of why Jensen was wrong in saying that no rational juror could find the accused devices to be sufficiently flat to meet the claim construction. Because what is the purpose of being an electronic multifunction card? If you go into a deduction of equivalence analysis, which he never did. It has nothing to do with purpose. It has to do with structure. The method claim calls for a structure that's flat, that's thin, that's small, like a credit card. Not limited to a credit card, but similar to a credit card. And Jensen said this thing is 17 to 30 times thicker than a credit card. End of case. Where is that wrong? Because flat, flat is not synonymous with a certain amount of thickness. I mean, this is my one. This is flat. It's a question that a jury, a jury, I don't see a jury being unable to rationally determine that either this is flat. It can be put in your pocket, your wallet. It can be used to carry around multiple data sets. If it's 30 times thicker than a credit card, it's not flat enough. If the limitation, if credit card were part of the limitation, perhaps, yes. But it is not. The limitation is electronic multifunction card. It wasn't called the PD. Card, card. He's saying that's not a card. My PDA is not a card. My Blackberry is not a card. That's all Judge Jensen is saying. How is that so outlandish? Because infringement, literal infringement, and doctrinal equivalence infringement are questions of fact. What, notice. You know what? Questions of fact can be resolved on summary judgment when they're not close. There was no doctrinal equivalence analysis. This court has said doctrinal. There was no doctrinal equivalence evidence. He doesn't have to analyze something when you haven't shown element by element evidence of equivalence. We put in our brief, we pointed out that the way in which the evidence. I'm not talking about evidence. I'm not talking about what you put in your brief. That's lawyer talk. There was no evidence of equivalency on an element by element basis, which is what our case law required. So your attempt to establish infringement by equivalence was totally defective. And therefore, he had no reason to discuss your evidence because you didn't put in evidence at that level, element by element. He didn't need to discuss it. It was, by definition, fatally flawed. That's because the response to the motions for summary judgment would only address those issues raised by the movements. We didn't put many evidence of damages either. Does that mean we waived damages? We only put in evidence to contradict those points raised by our adversaries. Our adversaries said that this is not 90-degree angle, that it's not flat enough. They moved on literal infringement. And they said this could not be a card under a Phillips approach or under Texas digital approach or under this court's decision in the first case. And we responded. Even if that's separate and apart from all of these arguments about the card, clearly there was a failure of proof with respect to the steps that are set forth in this claim. And this is a method claim. And that, it seems to me, forecloses any argument on both literal and doctrinal equivalence infringement because you've simply failed to establish that any of these accused devices function that way. I think a manual that teaches – and this is only claim one. You didn't go into the other claims. A manual that teaches the basic fundamental purpose of why anyone would have any of these devices teaches those steps coupled with those devices being out in the market. Correct me if I'm wrong, that the manual teaches all sorts of different features, different things that these devices can do. But nowhere in that manual is there any specific sequence of steps as set forth in the claim, correct? There is, though, the TRIO 600 manual, which is in the appendix. It sets forth each of the steps of the patented method. In the order listed? Well, I don't think it says next to this, next to that. That's the patent claim number one. But you have to. You have to transfer the data into the device before you can store it, select it, and display it. So if the manual says that your TRIO or your Palm 5 or Palm 7 connects to your computer to have the data transferred into it, after which you can have a password protection code, obviously you can't display it until you select it. You can't store it until you transfer it. So obviously if the manual teaches all those steps, it's impossible that nobody would practice what the manual teaches. I mean, this case goes beyond claim one, but the judge just decided to claim one, which of course is dispositive. But again, you're arguing that that manual teaches the steps as set forth in the claim, in the sequence described. Yes. If you're right, we should revert. And if it doesn't, we shouldn't. Even if you're right about that, wasn't the manual only for one of the devices, for the TRIO? I mean, there are other devices that you're challenging here, the Palm and the Tungsten. So even if you were right about the TRIO manual, where does that get you with respect to all the other devices that are also playing it, right? Because the number of devices or number of people that practice the method as a result of 271B-induced infringement may be relevant to damages. But it's my understanding that if one induces another to perform the steps of a patented method, and as a result of that inducement, a direct infringement does perform those steps, then there's liability. How many devices they perform it on, how often they do it. So even though this is a manual for one device, you're saying that we ought to assume that this manual could be applicable to all these other devices, and therefore there's an inducement with respect to those as well because of the manual? No, because we didn't get to brief or try the issue of how many devices or how much damages there are or anything else. But you had to put out some evidence. I mean, as we discussed before, you had to put out something with respect to the devices that are in play here. You say you put out something. You say it was enough. Some might disagree with respect to this manual. But the manual only went to one of the large number of devices. Where does that get you in terms of some evidence with respect to the other devices? Because if they – let's assume that it was only practiced on one device. That would satisfy the legal requirements of induced infringement. That is, that as a result of – That's right. But Judge Pruitt's point is if you have zero evidence for the other four devices, they fall out of the case. There's zero evidence of infringement because there's no manual in evidence as to the other devices. Well, I believe that we did put in other manuals, but in the brief we only cited to one of them. Where in the appendix is this instruction with respect to the steps? I'm sorry. It's in the reply brief on page 14, besides the appendix. The reply brief starts on page 14 of the reply brief and continues on 15 and 16. These are different snippets that relate to different aspects of these various devices. And there are pages scattered all over a long, complicated manual. Well, because the manual first teaches you how to transfer the information in. It teaches you various ways you can store it. It teaches you various ways you can display it. And it's also that the manual – I have a very hard time saying that if I write a manual, I'm inducing somebody to infringe a method patent. If in ten different places, on ten different scattered pages, there's a little snippet of language here and there that can be cobbled together, that just seems absurd to me. In my mind, respectfully, Your Honor. The manual writer isn't encouraging somebody to infringe this patent. He's encouraging somebody to know how the device he just bought works. In my mind, there are two separate issues, one of which was never addressed by the court below. One is, did the accused inducer intend and actually induce infringement? And number two, did anyone directly infringe? Did anyone carry out the steps of the patent? The court below made no findings, nor were there any moving papers for which we would oppose that dealt with intent or any of those issues of infringement. There's nothing in… But intent isn't relevant if there's no instruction to practice the method. The issue here is, did the relevant market or did consumers actually practice these steps on these devices? The question of whether the intent or the instructions were clear never came up with respect to the decision below. The elements of inducement, did they intend to do it, never came up. The only issue is a failure of proof as to whether there was any direct infringement. But the circumstances surrounding the market for these devices, first the manual teaches it, and second, there must have been because… Your speculation doesn't substitute for the lack of evidence. You have to put in evidence to prevail on summary judgment. You had no evidence, so you lost on summary judgment. You're asking us to say, well, people must have been infringing because it was possible to do. We don't know that. That's not proof. That's speculation. The manual clearly teaches every single step. I mean, how could you use these devices without carrying out those steps? It's impossible. Well, I think we have your case clearly enough. We'll give you back two minutes of your time for rebuttal. We'll hear from Mr. Bolor. Now, the three lawyers for various defendants filed a motion which, in an excess of generosity, was granted by the court. But it's hard to imagine how we need 30 minutes of argument among the three of you in response. So although we granted the motion and although we led you to believe you'd have 10 minutes each, that doesn't mean you need to use all 10 minutes. Please proceed. Thank you, Your Honor. May it please the court. I'll be very brief. I'm not going to need 10 minutes. I didn't hear anything in the arguments that were just made that applied to the visa defendants, visa employees, and that's been the problem throughout this case. The visa employees filed their motion for summary judgment after efforts to make EPAS conform with evidence both on their allegation of direct infringement, literal and doctrinal equivalence, and their allegation of indirect infringement by way of inducement. EPAS's counsel just said that there were only two issues on this appeal. We respectfully disagree. The court below put EPAS on notice that the summary judgment motions would deal with all the issues of infringement, including their allegation of inducement against the visa defendants. The visa defendants briefed all aspects of infringement, including inducements, and pointed out that there was no evidence of intent, no evidence of underlying direct infringement, pointing specifically to where there was a lack of evidence, and so the court properly considered all of that. Although he didn't mention it in his oral argument, EPAS has indicated that inducement against the visa defendants is not even an issue on this appeal. We respectfully disagree. The judge below entered... I don't understand why you disagree. If he hasn't raised any objection and you walk below, why do you try to sit down? Because, I mean, if he hasn't raised those issues, I would disagree with that if he has an appeal, but that's over, right? Okay, well, that's what we believe, is that the judgment was entered below. They've not appealed from it. That's the end of the story. The only other thing I would say is that nothing that was said about these manuals has anything to do with the visa defendants. There's been no evidence, there's been no argument. That's the same point. Yeah, the whole argument is the visa defendants with direct demonstrations, right? That's not an issue. Exactly. Now, let me just close by saying, Your Honors, that we filed a motion for attorney's fees in the court because we believe this was a 285 case. We believe, for the same reasons, that this is a frivolous appeal, and we think the court should consider it under Rule 38. Well, you haven't filed a motion here, have you? We have not. The Federal Rules of Appellant Procedure require that you file a motion. I was under the impression that Federal Rule 38, the court had authority to sua sponsae raise the issue of sanctions as well. Well, that is true, but in that event, we have to issue an order to show cause. There has to be a further proceeding. There has to be pleading filed by both sides. So we very rarely do that. I can't remember that we've ever done that. I think this might be an instance where the court should do that. If you thought sanctions were required, why didn't you move for sanctions? That's the lawyer's job. That's what litigators do. Well, because we raised it in our brief. Rule 38 says raising it in your brief is not enough. You have to file a motion. That's a requirement of the national rules, and it's not new. It's been in the rules for 10 years. You should know about that. I wonder if it isn't waived for failure to file a motion. We may have authority, but that doesn't mean we should exercise it in a case where the attorney in question hasn't bothered to file the required motion. All right. Thank you, Your Honor. Thank you, Mr. Sikorski. Just remind us who you represent so we can keep this straight. Yes, sir. I represent Palm, Palm One, 3Com, and Handspring. Thank you. What do you have to add? I'm sorry? What do you have to add? Well, the one thing I will add, Your Honor, is the chart that Counsel for E-Pass referred to that appears in their reply brief, that was something that was not presented in any of the briefing below. It was new to the parties, and therefore we've never really had a chance to rebut it. Wait, the chart? I'm sorry, what? Counsel for E-Pass referred to essentially a claim chart that appears in their reply brief, Your Honor. And like I mentioned, that was the first attempt that the parties have seen to match the purported evidence of the TRIO 600 against the various notations of Claim 1. That chart was not provided to the district court. It was not provided to the parties below. But were the pages that the chart cites from the manual cited to the district court? Yes. Well, why isn't that good enough? Well, the issue that that chart... He's not saying the chart proves my case. He's saying the page cites to the manual show that the manual encouraged people to practice the patented method. So if you were given the page cites, why aren't you adequately informed? Well, you're right that that's what their allegations are. The one point that I would raise for the panel is that the critical component that is still missing from that chart is the district court's claim construction ruling. For example, some of these limitations were construed in a particular way, and E-Pass, even looking at this chart, E-Pass fails to provide any argument or evidence that matches the evidence to the purported... Yeah, but they could say this in a narrative. I mean, you have an answer to that. You say, well, yeah, your narrative has one glaring omission. But that doesn't mean that there's something improper about their lining it up. I mean, these are just the words. I'm not saying it's improper. What it raises is, I mean, just to pick one example, the term data source in Claim 1 was construed to be a tangible data source. Look, we understand that lawyers don't construe claims, particularly not in a chart and reply brief. Judge Jensen, very carefully, twice after two marketing hearings and one remand, construed and reconstrued all the claim terms. We've got his opinion. We've read his opinion. We know exactly what his constructions were. We're not stupid. We're not confused because some lawyer uses different words to think that that's the authoritative construction claim. Obviously, what Judge Jensen construed is the construction that we look at. Absolutely. The one thing that I noticed in reviewing these papers, however, is that the claims do not appear in his order. Without the benefit of that claim description order, it might not be illustrative or evident when reading his summary judgment order on which this appeal is based. Look, if you want to submit the underlying marketing order, you should have done it a long time ago, and you can still do it, I suppose. Okay. I don't have plans to, Your Honor, but I appreciate that. Let me ask you, if you tell customers how to infringe, can you still escape liability if your products are capable of non-infringing uses? Absolutely, but I think it comes down to whether the instructions are pointed enough. For example, if... Well, look, if the instructions are not pointed enough, obviously you win. So you should maybe interpret Judge Brewer's question and say, well, suppose we don't agree with you. Do you have a fallback argument, a safety net, that even so we're not liable because there are many non-infringing uses for our product? Well, the hypothetical is open-ended. For example, the Golden Blount case, the device itself would not infringe, but when you install the calling certificate instruction sheet, it would. Right. So the question is, if we did provide specific instructions, here is how you must use your device, then I suspect there would be, but that's not the case with the evidence. Okay. So I didn't hear what you said. I mean, I think some of the argument... Well, some of the arguments you just suggested, as long as they're non-infringing uses, there wouldn't be any liability. I don't think that's what it... I misunderstood. If I misunderstood, I apologize. I think the evidence here is abundantly clear that there's so many various uses that to allege that users pick out these particular pages and these particular portions of various pages from a large, voluminous user guide is just unreasonable evidence. Anything further? Nothing further, Your Honor. Thank you. Mr. Rowland. Thank you, Mark Rowland, appearing on behalf of PalmSource. I have only one point to add, and that is to address counsel for E-Pass' assertion that it's impossible to use these devices without infringing the method claim. Not only is that speculation, as the court suggested, but also it contradicts an admission made by counsel for E-Pass below. And I direct the court's attention to page 7008 of the appendix at which counsel E-Pass engaged in discussion with Judge Jensen. Judge Jensen made the very specific point that counsel was not asserting that every sale of a PEA was an infringement. And the response by Mr. Weiss was that no, because some consumers would not carry out every single step. So it is very clear from the record below that it is not, as counsel suggests now, impossible to use the devices without infringing the method claims. Well, he doesn't have to prove that every use by every customer would infringe. He just has to prove that some customers have infringed and that they were not. That's correct, Your Honor. So I don't understand your point. You think your point is saying not every customer, every time he uses it, would be infringing. It doesn't seem responsive to the plaintiff's case here. The point is that one cannot presume or infer from a manual that simply teaches the capabilities of the device that it is necessary that those devices be used in an infringing way. Well, that's certainly true. That's the speculation point. That's the speculation point. I thought you said that had already been covered. It had been. But not only that, but it's confirmed in the record that, in fact, there are ways that this can be used without infringing. Nobody disputes that. Even Mr. Weiss agrees with that. Well, to say that it's impossible for it to be used, as Mr. Weiss said, without infringing a patent is to say something different. But that's not the point. It's not the point that it's impossible to use. The question is, does the instruction manual instruct on how to use it in accordance with the claim steps? If it does, presumably that's adequate circumstantial evidence that would establish some direct infringement. In this case, however, since there are ways in which it can be used in accordance with the manual that do not infringe, there are substantial non-infringing uses. And in that circumstance, where there are substantial non-infringing uses, the evidence of the capabilities of the manual, alone taught in the manual, cannot lead to an inference that the method has been practiced, that there has been direct infringement. What if there was a page in the manual that specifically laid out the steps as claimed? If that were the case, and it was laid out in sequence, that would be evidence of direct infringement. And that's to go to trial. We would, if that was sufficiently clear to show culpable conduct. Even if there were other steps, different ways to use it in a non-infringement way? If the question is, no, for purposes of showing direct infringement, that would not be sufficient. It would not be circumstantial evidence? It would not be sufficient. To overcome summary judgment? It would not be sufficient, because simply teaching the capabilities that these devices have lots of uses. In fact, they have thousands of applications. That one of them might be an infringing use is not evidence that it was in fact used that way. This is not the case where you were led to that conclusion because that's really the only use. That's what the device is designed to do, is that one thing, which is basically the molecular case. Are you saying that even if the device comes with a single sheet that has numbered steps that are exactly in the words of the patent, the patented method, claim one, that that little cheat sheet would not be sufficient to go to trial on inducing infringement merely because reading the whole manual, one would see there are other ways of using the device that would not be infringed. Is that your position? No, we don't have that circumstance here. I understand you don't have that circumstance here. But the hypothetical question was asked is if you had the steps lined out exactly as they are in the patent, does the fact that there are nevertheless some non-infringing uses save the day? I thought your answer was yes. I may have missed something, Your Honor. I think that where you have an allegation of inducement, that can be sufficient. I think that's been the law of decision at this point. So your case stands and falls on the manual didn't lay it out and encourage people to practice the steps in the sequence in the patent. Therefore, we win. That's correct, Your Honor. I think we can understand that. Thank you, Your Honor. Thank you. Mr. Weiss, two minutes of rebuttal. When we wrote the briefs, they were addressed to the opinion that was written by Judge Jensen in an attempt to point out the errors that we believed existed in his opinion in granting summary judgment. And nowhere in his opinion did he discuss the adequacies of circumstantial evidence. Nowhere did he discuss moleculon. Nor did he discuss the manuals, even. There was no mention of that at all. The manual, the GEO 600 manual, specifically talks about the steps, and he doesn't mention anything about circumstantial evidence in his opinion. What is circumstantial evidence? It's no different than direct evidence. He didn't need to reach the issue because he ruled on other grounds that made it unimportant to go on to decide further matters. There's nothing wrong with that. We encourage judges to not waste their time deciding things they don't need to decide. Courts are already too backed up and too slow and too expensive, even deciding those things that must be decided. They shouldn't be deciding things that don't need to be decided. See how that creates reversible error by Judge Jensen? Well, isn't it a question of the fact as to whether or not the manual actually teaches the steps sufficiently so that one can infer under the circumstances that the number of consumers would directly infringe as a result of that manual? It's like the patent jury charge. It says someone can swear that it's raining outside and someone can observe 100 people walking into a building with stripping umbrellas. Both of them support an inference of rain, and it's up to the finder of fact. He didn't make any discussion about the circumstantial evidence arguments that were presented below. He presented in the brief that we made these arguments before him morally and on paper. He even asked me during argument and summary judgment. He asked me about molecular. He said it's the fact of the process. Well, what is your point? Are you saying that his failure to discuss issue X automatically makes his judgment has to go back to trial? Is that your point? No. Well, what is your point then? My point is that the identification of the issue of fact defeats the summary judgment, and he was not permitted to resolve it. He was not permitted to say that there is no evidence of use when you have the 100 dripping umbrellas coming into the building, when you have a manual teaching every single step, a device that's capable of being operated according to the manual, and a device when operated according to the manual is used to practice claim one. But he had the manuals before him. He was certainly aware of what the law was. He was aware of the molecular decision, and he reached the conclusion that the manuals did not provide a sufficient ground to establish direct infringement directly or circumstantially. The fact that he didn't spell it out in specific detail doesn't change that fact. I don't recall. I mean, I could be mistaken. I don't recall reading any discussion of the manuals did not sufficiently support the circumstances. But you agreed that he had the manuals before him. He had the manuals before him. So your point has to be that his failure to discuss the manual per se is reversible error. No. It's the fact that the manuals were evidence, and he ignored it, meant that he'd resolve and issue it back in favor of the non-moving party without considering the circumstantial evidence. Why did he say he ignored it? He had it before him. What other evidence was there? Excuse me? What other evidence was there? Well, the whole purpose of circumstantial evidence is to explain. No, no. Answer my question. What other evidence was there? Just the circumstantial evidence. The manuals. And he had those manuals. Correct. So therefore, you have to be saying that even though he had it and he knew how to analyze it, that he didn't analyze it. And your proof that he didn't analyze it is simply that he didn't discuss it in his opinion. Right. Because he only discussed it. Therefore, your point has to come down to saying the omission of the discussion itself is reversible error. Because he does. Now, he discusses direct use, but he doesn't discuss circumstantial evidence abuse at all. He just ignores the issue totally. Why do the courts commit circumstantial evidence? So we don't have to go out and interview people and say, did you use this after you read the manual? Did you? And come in and swear to it. Just like we don't have to go out and find someone who swears it was raining to talk about the dripping umbrellas. The whole purpose of circumstantial evidence is, do the circumstances support the inference? Well, we had the manuals there. We had the fact that these things were solved. And he just speaks about direct evidence of infringement. So we can guess at what he's saying. I think we have your points clearly in mind. We'll take the case under advice. Thank you.